IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KERRY J. OWENS, JR.,

                Plaintiff,

v.                                                             ORDER

SAMUEL PATEK and                                    18-cv-624-jdp
GARRETT MORRIS,

                Defendants.

---

Pro se plaintiff Kerry J. Owens, Jr., an inmate at Wisconsin Secure Program Facility, is proceeding on Fourth Amendment excessive force claims against defendant police officers. He alleges that defendant Samuel Patek tased him while he was standing still with his arms above his head, and that defendant Garrett Morris physically assaulted him in a holding cell at the Beloit Police Department precinct. There are three motions pending before the court: (1) defendants' motion to take Owens's deposition, Dkt. 35; (2) Owens's renewed motion for assistance in recruiting counsel, Dkt. 39; and (3) Owens's motion for sanctions based on defendants' alleged spoliation of evidence, Dkt. 29.

**A. Motion to take deposition and renewed motion for assistance in recruiting counsel**

I will address the first and second motions together, because both relate to Owens's deposition. A deposition is a question-and-answer session that takes place before the trial, in which the person being question is placed under oath. Under Rule 30 (a)(2)(B), a party must obtain leave of court before deposing someone who is confined in prison. Defendants have moved to depose Owens under Rule 30 (a)(2)(B). This court usually grants such motions as a matter of course, and I will do so here as well.

In response to defendants' deposition notice, Owens has renewed his motion for assistance in recruiting counsel. I denied Owens's previous motion for assistance in recruiting counsel because (1) Owens had not adequately documented his attempts to find a lawyer, and (2) I concluded that the legal and factual issues in his case were relatively straightforward and did not exceed Owens's abilities.

Owens has resolved the first issue in his renewed motion, which indicates that he has made at least three attempts to secure representation. *See* Dkts. 39-1–39-3. Dkt. 22. But Owens has still not shown that the complexities of his case exceed his ability to litigate it. His renewed motion simply reiterates much of what he said in his original motion: he cannot afford counsel, he has limited access to a law library, and the legal resources at WSPF are not helpful to him. He also mentions the deposition, and I infer that Owens is anxious about being deposed without a lawyer. But depositions in these kinds of cases are routine, and getting deposed does not require legal knowledge or expertise. All Owens needs to do is answer the questions he is asked honestly and to the best of his ability. If he finds a question confusing, he may ask for clarification. If he doesn't know the answer to a question, he can say so. The focus of the deposition will be the facts of Owens's case; he will not be asked about the law.

Because I am still not persuaded that the complexities of this case exceed Owens's abilities, I will deny his renewed motion for assistance in recruiting counsel.

**B. Motion for sanctions**

That leaves Owens's sanctions motion. Owens seeks sanctions based on defendants' alleged spoliation of evidence relevant to his case—specifically, defendants' alleged intentional deletion of (1) photographs taken on January 23, 2015, the date of the excessive force incidents; and (2) surveillance footage of the booking area, hallway, and holding cell of the jail

where Owens was allegedly assaulted. Owens says that in response to his discovery requests, defendants produced only two photos and indicated that there was no surveillance footage, because the security system in question maintains files for only 44 days.

1. **Photographs**

In response to Owens's allegations about the unproduced photographs, defendants state that, after serving Owens with discovery, they "became aware of additional photos, which were taken of Plaintiff at his residence after he was detained by Officers." Dkt. 30 at 2. So on March 15, 2019, they supplemented their discovery responses and provided Owens with twelve additional photos, in accordance with their obligations under Rule 26(e)(1)(A). Owens has filed these photos on the docket. *See* Dkt. 34-3 and Dkt. 34-4. The photos of Owens show him lying face-down on the ground after being tased.

In reply, Owens indicates that he is dissatisfied with defendants' supplement because it does not include photos "of the plaintiff[']s injuries that were stated by the defendants to have been taken the night of January 23, 2015 before E.M.[S.] removed him from the scene." Dkt. 34, at 2. I infer that Owens is referring to defendant Morris's statement in a police report that he "took pictures of . . . the [taser] probe strike itself . . . and of Owens' overall injuries." Dkt. 18-1, at 5. But Owens also acknowledges that, in a prior criminal proceeding, Morris testified that these twelve additional photographs were "all that were taken." Dkt. 34, at 2 (citing Dkt. 18-1, at 24). Morris also testified that the only "injuries" he photographed were "[t]he probe strikes" from the taser, Dkt. 18-1, at 31, a photo of which is included in the supplemental batch of photos that defendants provided. *See* Dkt. 34-3, at 1.

Owens says that there are two possible explanations for the absence of any additional photographic evidence of his injuries. First, he speculates that defendants might have taken

3

additional photos of his injuries "and then destroyed them once they realized" that they were inconsistent with Owens's booking photos (which Owens says show the injuries he sustained later, when Morris beat him at the police precinct). Dkt. 34, at 3. Second, Owens speculates that defendants simply "lied when they said they took photos of the plaintiff[']s injuries." *Id.* But in the first scenario, spoliation sanctions would be inappropriate because Owens has offered no evidence, other than his own speculation, that these additional injury photos were taken, let alone destroyed. *See Rummery v. Ill. Bell Tel. Co.*, 250 F.3d 553, 558 (7th Cir. 2001) (denying adverse inference instruction when moving party "offered no evidence, other than his own speculation, that [the documents] were destroyed to hide" incriminatory evidence). And in the second scenario, spoliation sanctions would be inappropriate because the photos at issue would not have existed in the first place. So I will deny Owens's motion as to any hypothetical additional photographs of his injuries.

   2. **Video surveillance**

Owens's allegations about the lost video surveillance footage raise a different set of issues. During discovery, Owens requested video of the booking area, hallway, and holding cell of the Beloit Police Department precinct from the night of January 23, 2015. He says that the video would corroborate his allegation that Morris assaulted him in the holding cell. Defendants responded to this request by informing Owens that the security system maintains files for only 44 days, so any footage from the night of Owens's arrest would have been deleted more than four years ago.

For spoliation sanctions to be appropriate, Owens must show that (1) defendants had a duty to preserve evidence because they "knew, or should have known, that litigation was imminent," and that (2) the destruction of the evidence "was done in bad faith," meaning that

4

it was done "for the purpose of hiding adverse information." *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). Defendants contend that Owens cannot make this showing here because he waited until four years after the alleged incident to request the video footage; there is nothing in the record to indicate that Patek or Morris intentionally deleted the footage; and, in any event, neither Patek nor Morris had custody or control of the video.

In response, Owens contends that defendants had a duty to preserve the video by virtue of Beloit Police Department policy, which says that officers have a duty to preserve evidence related to any use-of-force incident that could become the subject of civil litigation. But the existence of this policy is evidence of spoliation only if the alleged holding-cell assault in fact occurred. The parties have not yet submitted summary judgment motions or pretrial filings, but I assume that the question of whether Morris assaulted Owens in the holding cell is one of the central factual disputes in this case. If Morris assaulted Owens, he would have had a duty to ensure that evidence of the assault was preserved. But if no such assault occurred, no one at the Beloit Police Department would have been on notice of the need to preserve anything. In other words, granting a spoliation sanction would require me to pre-judge the merits of this case.

Owens also says that he orally complained that he had been physically assaulted to defendants and to officials at the Rock County Jail (who conveyed his complaints to the Beloit police) on the night of January 23, 2015. This evidence is potentially more helpful to Owens. If he complained to the relevant authorities about the holding-cell assault within 44 days of January 23, that could indicate that defendants had notice of their duty to preserve relevant evidence.

But the specific evidence Owens cites does not corroborate his assertion that he put defendants on notice that the holding-cell surveillance footage should be preserved. Owens cites two excerpts from police reports filed by Morris as evidence of his oral complaints. The first excerpt reads as follows:

> It should be noted that after being tased and handcuffed on the ground, Owens became very aggressive and loud, yelling, causing a disturbance in the hallway. *Owens began stating that he was getting beat up by the City of Beloit Police Department for being black*. At one point, Owens lost control and intentionally banged his forehead on the concrete-carpeted floor.

Dkt. 18-1, at 6 (emphasis added). The complaint described in this account preceded Morris's alleged assault of Owens at the precinct, so it could not have put anyone on notice of the need to preserve surveillance footage from the holding cell.

The second excerpt Owens cites says the following:

> *When Owens was transported to the Rock County Jail later in the evening he made allegations that he was "beat up" by the Beloit Police Department*. Copies of Owens booking photos were sent to the Beloit Police Department for review. While looking at these photos the injuries observed on Owens were mostly likely caused by the initial disturbance with [a civilian non-party] which occurred prior to police arrival as well as when Owens fell on the ground after being tased.

Dkt. 18-1, at 2 (emphasis added). This excerpt indicates that Owens made an additional complaint when he arrived at Rock County Jail, after the alleged holding-cell assault. But this description of Owens's complaint gives no indication whether Owens complained specifically that Morris had assaulted him *in the holding cell at the police precinct* as opposed to earlier, during the arrest. Absent some evidence that Owens complained specifically about the holding-cell assault, he has not met his burden of showing that police officials were on notice that the holding-cell surveillance footage should have been preserved.

6

Because Owens has not met his evidentiary burden, I will deny his motion for sanctions. He is free to renew his motion if he can put forward specific evidence to substantiate his claim that (1) he was assaulted by Morris in the holding cell, meaning that Morris had a duty to ensure that relevant evidence was preserved; or that (2) he complained specifically about the holding-cell assault to the relevant authorities within the 44-day period when the surveillance footage was available. Such evidence could include written communications between the Rock County Jail and the Beloit Police Department summarizing his complaint, grievances he filed using the procedures available to him at the Rock County Jail, affidavits from witnesses with personal knowledge, or any other evidence that would show that deputies of the Rock County Jail or officers at the Beloit Police Department were on notice that video of his holding would be pertinent to a claim.

ORDER

IT IS ORDERED that:

1. Defendants' motion to take plaintiff Kerry Owens's deposition, Dkt. 35, is GRANTED;

2. Owens's motion for assistance in recruiting counsel, Dkt. 39, is DENIED;

3. Owens's motion for spoliation sanctions, Dkt. 29, is DENIED.

Entered July 19, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge